UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| MILTON G. BROWN, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:12 CV 67 |
| PURDUE UNIVERSITY NORTH CENTRAL, DEEPA MAJUMDAR, JANUSZ DUZINKIEWICZ, and BELINDA HULEY, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION and ORDER

**I.     BACKGROUND**

Plaintiff Milton G. Brown was diagnosed with schizophrenia, depression, and bipolar disorder in 1991. (DE # 24-1 at 2, Pl. Dep. 19:7-8, 14.) He enrolled at Purdue University North Central in August of 2006. (*Id.* at 3, Pl. Dep. 25:5-12.) Plaintiff formally requested additional time and a distraction-free environment for taking tests in some of the courses he took at Purdue. (*Id.* at 7-8, Pl. Dep. 33-36.) Plaintiff states that there was never a time when the university did not provide a requested accommodation. (*Id.* at 29, Pl. Dep. 81:3-6.)

In the fall of 2009, plaintiff took a course called "Greater Issues" with Professor Janusz Duzinkiewicz. (*Id.* at 12-16, Pl. Dep. 43-55.) He was required to turn in a ten-page paper by December 3, but turned in a draft early in order to receive additional comments. (*Id.*) Professor Duzinkiewicz found problems with multiple drafts, and eventually gave plaintiff a grade of "incomplete" for the course. (*Id.*) Professor

Duzinkiewicz permitted additional revisions on the paper the following sememster. (*Id.*) In February 2010, after plaintiff turned in his final paper, Professor Duzinkiewicz gave plaintiff a "D" grade in the course. (*Id.*)

Meanwhile, plaintiff was taking "Greater Issues II" as part of his Spring 2010 semester with Professor Deepa Majumdar. According to plaintiff, Professor Majumdar reviewed an early draft of a paper he wrote, and told him (and perhaps the administration, though it is unclear from the record) that she did not believe that he would be able to pass her course. (*Id.* at 21, Pl. Dep. 65:1-8.) Plaintiff only attended the class a few times before dropping it on the advice of the dean of students and the university's disability coordinator. (*Id.* at 20, Pl. Dep. 62:1-17.)

On February 8, 2010, plaintiff's psychologist, Dr. Alan Wax, sent the university a letter indicating that he recommended that plaintiff cease his educational endeavors and pursue treatment for his mental illnesses. (*Id.* at 32-33, Pl. Dep. 89-90; Letter at DE # 24-1 at 41.) Thereafter, the university sent a letter dated February 9, 2010, to plaintiff, asking him not to come to campus until he was cleared to do so by Dr. Wax, though plaintiff does not remember receiving the letter. (DE # 24-1 at 42.) Plaintiff withdrew from classes via a letter to the dean dated February 18, 2010, citing emotional distress. (*Id.* at 32, Pl. Dep. 89; Letter at DE # 24-1 at 40.) Plaintiff states that he withdrew from classes because he was not mentally stable (DE # 24-1 at 33, Pl. Dep. 90:1-9), but he admits that he withdrew by choice. (*Id.* at 23, Pl. Dep. 70:10-16.)

Purdue permitted plaintiff to complete his education by participating in "independent studies" from fall of 2010 until the spring of 2012. (*Id.* at 10, Pl. Dep. 39:1-5.) Plaintiff corresponded with his professors via email, phone, and fax while he completed these courses. (*Id.* at 11, Pl. Dep. 41:12-15.) He ultimately graduated in 2012. (*Id.* at 29, Pl. Dep. 81:3-6.) Plaintiff claims that, as a result of the alleged discrimination he suffered at the hands of defendants, he had to pursue mental health treatment, go back on medication, take time off from school, graduate later than planned, and possibly missed a job opportunity (though he does not provide any details about the opportunity). (*Id.* at 19, Pl. Dep. 60:1-2, 11-18; *id.* at 23, Pl. Dep. 70:1-7.)

Plaintiff also attested that, at some point, defendant's disability coordinator, Belinda Huley, falsely reported plaintiff (presumably to university officials) as smelling of alcohol and/or drugs and looking at her with "sexual eyes." (*Id.* at 24-25, 28; Pl. Dep. 72, 74, 78.) On the advice of his vocational rehabilitation counselor and in order to clear his name, he took a drug test, the results of which were negative. (*Id.*) Plaintiff claims the university did not properly address what he perceived to be defamation of his character, though he admits that the suggestion that he take a drug test was, "based on my history, you know, that– that was smart . . . that's not no prejudice thing to do." (*Id.* at 25, Pl. Dep. 74:9-11.)

Plaintiff did not request a hearing from the university regarding his issues with Huley, Duzinkiewicz, or Majumdar. (*Id.* at 27, 28, Pl. Dep. 77:19, 78:2-4.) On February 2, 2012, he filed a lawsuit against the university, Huley, Duzinkiewicz, and Majumdar,

3

alleging that defendants committed the tort of intentional infliction of emotional distress ("IIED") and violated 42 U.S.C. § 1983, 1985, and 1986; Section 504 of the Rehabilitation Act of 1973, 49 U.S.C. § 794; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132; and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681. Defendants have moved for summary judgment (DE # 23), and the motion is now ripe for ruling.

II.     **LEGAL STANDARD**

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

4

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995). Importantly, the court is "not required to draw every conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee,* 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

III. **DISCUSSION**

    A. **Motion to Strike**

Defendants have moved to strike the sole exhibit plaintiff filed with his response brief: a print-out of the university's procedures for accommodating students with disabilities. (DE # 28.) This exhibit has no bearing on the court's analysis herein, so the court denies defendants' motion as unnecessary.

    B. **Abandonment of Claims**

Defendants moved for summary judgment on all of the claims presented by plaintiff in his complaint. In his response, plaintiff addressed only his ADA, Rehabilitation Act, and IIED claims. Accordingly, the court deems the remaining claims abandoned and grants summary judgment for defendants on those claims. *Palmer v.*

5

*Marion County,* 327 F.3d 588, 597-98 (7th Cir. 2003) (failure to address claim in response to summary judgment motion is deemed abandoned).

    C.    **Plaintiff's Discrimination Claims**

At the outset, the court notes that defendants argue an entitlement to sovereign immunity with respect to plaintiff's ADA claim. The question of whether state educational institutions enjoy sovereign immunity from damages claims made under Title II of the ADA is an open question in this circuit; the Seventh Circuit has not ruled on the issue and district courts are not in agreement. *Compare Novak v. Bd. of Trustees of S. Illinois Univ.,* No. 12-CV-7-JPG, 2012 WL 5077649, at *5-8 (S.D. Ill. Oct. 18, 2012) (Title II claim not barred by sovereign immunity); *with Rittenhouse v. Bd. of Trs. of S. Ill. Univ.,* 628 F. Supp. 2d 887, 894-95 (S.D. Ill. 2008) (Title II claim barred by sovereign immunity); *Doe v. Bd. Of Trs. of Univ. of Ill.,* 429 F. Supp. 2d 930 (N.D. Ill. 2006) (same). This court need not expend time and resources addressing the issue. Even if this court found that defendants were not immune from suit under the ADA, plaintiff's ADA claim would fail, as explained below.

Section 504 of the Rehabilitation Act and Section 202 of the ADA both prohibit discrimination against the disabled. Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Section 202 of the ADA similarly provides

6

that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Seventh Circuit considers the statutes largely "coextensive" and analyzes them under the same rubric. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).

A claim under either the ADA or the Rehabilitation Act requires proof, by the plaintiff, that: (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people. *Id.* Plaintiff makes no argument that defendant failed to provide reasonable modifications. Indeed, plaintiff himself admits that Purdue granted every request for modification that he made and afforded him many additional accommodations, including additional time to complete assignments and independent study to complete his degree. (*Id.* at 8-9, 29; Pl. Dep. 37:21-25, 38:1-16, 81:3-6.) Nor does plaintiff present any arguments or evidence that defendants' rules disproportionally impacted disabled people. Accordingly, the court considers whether plaintiff has offered evidence creating an issue of fact as to whether defendants acted on the basis of plaintiff's disability.

In his response brief, plaintiff's only argument that defendants acted improperly under the ADA and Rehabilitation Act is his assertion that defendants failed to maintain written documents regarding his case and failed to permit him a hearing. (DE

# 27 at 2, 8-9.) In support of his argument, he presents a one-page print-out of a university webpage, which explains that a university employee will maintain files on accommodation requests made by students. Even if the court assumes (without proof) that defendants did, indeed, fail to maintain a file related to plaintiff's accommodation request or provide him with a hearing, plaintiff has presented no evidence that defendants failed to do so *on the basis of* plaintiff's disability. There is scant evidence in the record that the relevant decision-makers in charge of maintaining the written documents or permitting him a hearing (whoever they may have been) even knew of plaintiff's disability, other than the fact that he needed additional time and a distraction-reduced environment when taking exams. Further, plaintiff admits that he never requested a hearing regarding any of the issues he raises. Plaintiff's own belief that his disability was the basis for defendants' decisions regarding maintenance of his file and defendants' failure to permit him an unrequested hearing is insufficient. *See CTL*, 743 F.3d at 528-29 (disabled student's mother's opinion that school employee's personality was "callous and indifferent" and "rigid" did not establish that school acted on the basis of student's disability).

Nor has plaintiff presented any legal support for his argument. Plaintiff primarily relies upon a case from 1891, in which a New York trial court held that, as a matter of contract law, a medical student who had fulfilled all the requirements set forth by the medical school should be permitted to sit for his final examinations. *People ex rel. Cecil v. Bellevue Hosp. Med. Coll.,* 14 N.Y.S. 490, 490 (1891). Not only is the case

antiquated and not controlling in this jurisdiction, it is also a contract case that has no bearing on the legal issues in this case. Indeed, it contains no references to the ADA or Rehabilitation Act at all, because those statutes did not yet exist. Further, the case provides no support for plaintiff's case; there is no evidence that plaintiff was refused the opportunity to sit for any examinations or complete any required coursework. On the contrary, plaintiff admits that defendants never failed to provide any requested accommodations and ultimately permitted him to complete his education and obtain his degree by conducting independent studies for several semesters. For all these reasons, defendants' motion for summary judgment on plaintiff's ADA and Rehabilitation Act claims is granted.

> **D.** **Plaintiff's IIED Claim**

Defendants also move for summary judgment on plaintiff's IIED claim. In his response brief, plaintiff claims that defendants inflicted emotional distress upon him in the following ways: (1) Professor Duzinkiewicz failed to provide him with a mid-term progress review, required him to re-write his paper, and set unreasonable conditions on his assignments; (2) Professor Majumdar told Purdue administrators that plaintiff was going to fail his course; and (3) Huley made false accusations that plaintiff entered her office smelling of drugs and alcohol and created an episode. (DE # 27 at 9-10.)

In order to establish the tort of IIED under Indiana law, a plaintiff must show that the defendant engaged in extreme and outrageous conduct. *Waldrip v. Waldrip*, 976 N.E.2d 102, 117 (Ind. Ct. App. 2012). "Intentional infliction of emotional distress is

9

found where conduct exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious kind." *Lachenman v. Stice,* 838 N.E.2d 451, 457 (Ind. Ct. App. 2005). Plaintiff's allegations that his professors failed to provide him with progress reviews, required him to rewrite papers, set unreasonable conditions (the specifics of which the court has not been informed), and informed administrators of the probability that he would fail a course do not rise to the level of "extreme and outrageous" conduct required under Indiana law. Rather, these are common experiences of higher education students everywhere, which are within the bounds of conduct tolerated by decent societies. If every college student were permitted to recover for emotional distress caused by the actions of professors that students felt were unreasonable or demanding, this nation's justice system would grind to a halt due to an overwhelming surge in lawsuits by disgruntled students.

However, the court cannot grant summary judgment in favor of Huley on plaintiff's claim that Huley intentionally caused him emotional distress by reporting that plaintiff smelled of drugs and alcohol and created an episode. Defendants do not explain, with any specificity, Huley's legal or factual entitlement to summary judgment on this particular claim, and from what the court can glean from the record, the issue is a "he said, she said" dispute for which summary judgment is "singularly inappropriate." *Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 340 (7th Cir. 2001). However, because this state law tort claim is the only remaining claim in this case, the court declines to exercise jurisdiction over this matter any further. Principles of

comity encourage the court to relinquish supplemental jurisdiction over state law claims when all of the federal claims are disposed of prior to trial. *See Hansen v. Bd. of Trs. of Hamilton Southeastern Sch. Corp.,* 551 F.3d 599, 608 (7th Cir. 2008); *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."); 28 U.S.C. § 1367(c)(3). Plaintiff will not be prejudiced by this dismissal because he may refile the case in state court as appropriate under Indiana's savings statute, IND. CODE § 34–11–8–1, and the tolling provision of 28 U.S.C. § 1367(d).

IV. **CONCLUSION**

For the reasons set forth above, the court **GRANTS** defendants' motion for summary judgment (DE # 23) as to all of plaintiff's claims except his claim against defendant Huley for intentional infliction of emotional distress. The court also **DENIES** defendants' motion to strike (DE # 28). Further, the court relinquishes jurisdiction, and **DISMISSES** the only remaining claim in this case – plaintiff's state law intentional infliction of emotional distress claim against defendant Huley – without prejudice.

Because no claims remain against any defendants, the Clerk is ordered to **ENTER FINAL JUDGMENT** in this case. The court now **VACATES** all pending deadlines and briefing schedules.

                                        **SO ORDERED.**

Date: February 13, 2015

                                        s/James T. Moody  
                                        JUDGE JAMES T. MOODY  
                                        UNITED STATES DISTRICT COURT